IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

OLGA DIAZ,

                 Plaintiff,

v.

JAMES SCHMIDT,

                 Defendant.

OPINION and ORDER

24-cv-161-jdp

---

Plaintiff Olga Diaz is the former vice chancellor for Equity, Diversity, Inclusion, and Student Affairs at the University of Wisconsin—Eau Claire. Diaz contends that chancellor James Schmidt terminated her in retaliation for opposing race discrimination and for exercising her rights under the First Amendment, in violation of 42 U.S.C. § 1981 and § 1983. Specifically, Diaz says that Schmidt terminated her because she refused to persuade an employee in her department to drop a racial discrimination complaint and because she agreed to provide testimony to outside investigators about the employee's complaint.

Schmidt moves for summary judgment on two grounds. First, he contends that Diaz's claims are barred by sovereign immunity. Second, he contends that Diaz's claims fail on the merits. The sovereign immunity issue is dispositive, so the court will grant Schmidt's motion on that basis without considering the merits.

BACKGROUND

Many details in this case are disputed, but the facts that matter to sovereign immunity are not. The following facts are undisputed except where noted.

Diaz began working for the University of Wisconsin—Eau Claire in 2021 as the vice chancellor for Equity, Diversity, Inclusion, and Student Affairs (EDISA). Diaz was responsible for managing several campus departments, including Blugold Beginnings, which provided support to low-income, first-generation, and other underrepresented students, and the Office of Multicultural Affairs, which provided support to students who were members of racial minority groups.

In early 2022, Diaz announced that Blugold Beginnings and the Office of Multicultural Affairs would merge into the new Multicultural Student Services (MSS) department. Some faculty, staff, and students objected, believing that the merger would inhibit the retention of non-white staff and end the Office of Multicultural Affairs' longstanding practice of matching students with support staff of the same racial background. Some members of the campus community felt that Diaz didn't adequately respond to these objections, and some of them expressed concerns about Diaz's leadership skills to Chancellor Schmidt.

Diaz appointed Rochelle Hoffman, a white woman who had formerly worked in Blugold Beginnings, to a leadership role in the new MSS department. The court described Hoffman's case in detail in *Hoffman v. Board of Regents of the University of Wisconsin System*, No. 23-cv-853-jdp, 2025 WL 1504376 (W.D. Wis. May 27, 2025). To briefly summarize, some students, faculty, and staff reacted negatively to Hoffman's appointment, believing that white people should not lead departments dedicated to supporting non-white students. Some of Hoffman's coworkers also treated her in an unfriendly manner. Ultimately, Hoffman filed a race discrimination complaint about her treatment within the MSS department. Shortly after, Hoffman transferred from the MSS department to the Student Support Services (SSS)

department. The university said that the transfer was Hoffman's decision, but Hoffman said that she had been forced to transfer.

Diaz supported Hoffman's discrimination complaint and provided testimony to a UW System investigator that corroborated Hoffman's allegations. Diaz says that during a one-on-one meeting, Schmidt asked her to persuade Hoffman to withdraw the discrimination complaint and he became angry when Diaz refused to do so. Shortly thereafter, Schmidt asked for Diaz's resignation and when she did not give it, he terminated her. For his part, Schmidt denies asking Diaz to persuade Hoffman to withdraw the discrimination complaint. He says that he terminated Diaz because senior members of her team had lost confidence in her leadership abilities.

## ANALYSIS

This case turns on the scope of the state's sovereign immunity from suit under the Eleventh Amendment. The State of Wisconsin is not formally a defendant in this case because Diaz has sued Schmidt in his individual capacity. But Schmidt contends that the state is the real party in interest, so sovereign immunity bars Diaz's claims.

Diaz is suing Schmidt under 42 U.S.C. § 1983, contending that he retaliated against her in violation of her rights under 42 U.S.C. § 1981 and the First Amendment. Section 1983 authorizes suits for monetary damages against individuals who commit statutory or constitutional violations under color of state law. *See Campbell v. Forest Pres. Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014) (§ 1983 is the exclusive remedy for violations of § 1981 committed by state actors). But states cannot be sued under § 1983; the Supreme Court has held that they are not "persons" who may be sued under the statute, nor did § 1983 abrogate

state sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Quern v. Jordan*, 440 U.S. 332, 344–45 (1979); *see also Gerlach v. Rokita*, 95 F.4th 493, 500–01 (7th Cir. 2024).

Generally, state actors can be sued in their individual capacities under § 1983 without raising sovereign immunity concerns. *Hafer v. Melo*, 502 U.S. 21, 30 (1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 243 (1974)). But the Seventh Circuit has recognized an exception to the general rule when a plaintiff's claims are "really and substantially . . . against the state." *Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001). In *Luder,* state prison employees sought damages from their supervisors for violations of federal wage-and-hour laws. The court held that these claims were barred because a judgment for the employees would require the state to pay the employees the wages that they sought. The court reasoned: "The plaintiffs are seeking to accomplish *exactly* what they would accomplish were they allowed to maintain this suit against the state and did so successfully: they are seeking to force the state to accede to their view of the [FLSA] and to pay them accordingly." *Id.* at 1024.

The Seventh Circuit has twice applied the *Luder* exception to cases in which a state employee has sued a supervisor under § 1981 and § 1983 for workplace conduct. *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003); *Haynes v. Indiana Univ.*, 902 F.3d 724, 731–32 (7th Cir. 2018). In *Omosegbon*, the plaintiff sued state university officials under § 1983 for due process and academic freedom violations after the university terminated his junior faculty contract. 335 F.3d at 672. The court held that sovereign immunity barred the plaintiff's claims because he sought "backpay and other forms of monetary compensation based on an employment contract" and therefore the case bore "no resemblance to a *bona fide* individual capacity suit." *Id.* at 673. In *Haynes*, the plaintiff sued university administrators under § 1981, alleging that he was denied tenure because of his race. Because the plaintiff was seeking

4

"monetary relief for an injury relating to his employment" and because the individual defendants were not parties to his employment contract in their individual capacities, the court determined that there was "no reason to believe that [the individual defendants], rather than the University, would foot the bill for a resulting judgment." 902 F.3d at 732.

This court, applying *Omosegbon* and *Haynes*, has ruled in three recent cases that individual-capacity claims brought by state employees were barred by sovereign immunity. *Hoffman*, 2025 WL 1504376; *Melgaard v. Wisconsin Dep't of Nat. Res.*, No. 24-cv-561-jdp, 2025 WL 3268370 (W.D. Wis. Nov. 24, 2025); *Mahmoud v. Bd. of Regents of the Univ. of Wisconsin Sys.*, No. 24-cv-384-jdp, 2026 WL 242087 (W.D. Wis. Jan. 29, 2026). The court understands *Omosegbon* and *Haynes* to stand for the following principle: "sovereign immunity bars a state-employed plaintiff from bringing individual-capacity claims against state-employed supervisors or coworkers who deprived him of rights, benefits, or opportunities arising from his employment relationship with the state." *Melgaard*, 2025 WL 3268370 at *4. Thus, claims that supervisors unlawfully demoted, transferred, brought disciplinary action against, and failed to promote state employees were barred, because each of those claims involved the deprivation of rights, benefits, or opportunities arising from the state employment. *Hoffman*, 2025 WL 1504376, at *4–*5; *Melgaard*, 2025 WL 3268370, at *4; *Mahmoud*, 2026 WL 242087, at *7.

The same result follows here. Diaz's claims are based on Schmidt's decision to terminate her, which is plainly a deprivation of a benefit arising from her state employment. The monetary relief that Diaz seeks stems directly from the loss of her employment contract with the state. The court sees no meaningful distinction between this case and *Omosegbon* and *Haynes*, so binding circuit precedent compels the dismissal of this case on sovereign immunity grounds.

5

Diaz resists this conclusion with two arguments. First, she attempts to distinguish *Hoffman*, arguing that "Schmidt did not personally participate in the racial discrimination that Hoffman endured whereas Schmidt is the individual who retaliated against and terminated Diaz." Dkt. 58, at 5. It's not clear that this is a true distinction: Hoffman argued on summary judgment that the individual defendants in her case, including Schmidt, were personally involved in depriving her of her rights. *See Hoffman*, case no. 23-cv-753-jdp, Dkt. 47, at 34–37 (Hoffman's brief in opposition to summary judgment). In any event, *Omosegbon* and *Haynes* turned not on the extent of the individual defendants' involvement, but on the injuries suffered by the plaintiff. *Omosegbon*, 335 F.3d at 672; *Haynes*, 902 F.3d at 732. Schmidt's personal involvement in the alleged deprivations that Diaz experienced is relevant to the merits of Diaz's § 1983 claims against him, but it is immaterial to the sovereign immunity analysis.

Second, Diaz argues that if the sovereign immunity principle outlined in *Omosegbon* and *Haynes* were construed to bar her claims, then it would bar almost all § 1983 claims based on a state employment relationship, essentially "render[ing] individual capacity suits a nullity." Dkt. 58, at 6. This is a fair point. The Seventh Circuit, in *Omosegbon* or *Haynes*, did not explicitly address the apparent far-reaching implications of a rule barring individual capacity suits where a state employee seeks "monetary relief for an injury relating to his employment with [the state]." *Haynes*, 902 F.3d at 732. Nor did the Seventh Circuit explain how it distinguished the Supreme Court's decision in *Hafer*, which endorsed an individual-liability suit under § 1983 against a state-employed supervisor who terminated state employees without due process and in violation of their First Amendment rights. 502 U.S. at 23. But *Omosegbon* and *Haynes* are binding in this circuit, so this court must apply them in the absence of a meaningful factual distinction.

6

District courts in this circuit have proposed two limiting principles to *Omosegbon* and *Haynes*, neither of which the court finds persuasive. First, some district courts have concluded that individual-capacity suits are not barred if the plaintiff seeks compensatory or punitive damages other than lost wages and benefits.[1] But this court already rejected that argument in *Hoffman*, observing that *Omosegbon* and *Haynes* turned on whether the claims against the individual defendants stemmed from the plaintiff's state employment contract, not on whether the plaintiffs sought damages other than lost wages and benefits. *See Omosegbon*, 335 F.3d at 668 (plaintiff seeks "backpay *and other forms of compensation* based on an employment contract") (emphasis added); *Haynes*, 902 F.3d at 732 (plaintiff seeks "monetary relief for an injury relating to his employment").

Second, some district courts have observed that *Haynes* was a case under 42 U.S.C. § 1981, which governs contractual relationships, so the claims in that case were uniquely premised on the plaintiff's employment contract with the state. *E.g.*, *Isabell v. Trs. of Indiana Univ.*, 432 F. Supp. 3d 786, 795–96 (N.D. Ind. 2020). But the court of appeals did not rely on that fact to reach its conclusion in *Haynes*. On the contrary, the court described the facts of *Haynes* as "materially the same" as *Omosegbon*, which involved a § 1983 due process claim, not a § 1981 claim. 732 F.3d at 732.

---

[1] *See Sizyuk v. Purdue Univ.*, No. 4:20-cv-75, 2024 WL 68282 (N.D. Ind. Jan. 5, 2024), *Doe v. Purdue Univ.*, No. 4:18-cv-89, 2019 WL 1369348 (N.D. Ind. Mar. 25, 2019); *Williams v. Ne. Illinois Univ.*, No. 23-cv-03961, 2024 WL 2959504 (N.D. Ill. June 11, 2024); *Reinebold v. Indiana Univ. at S. Bend*, No. 3:18-cv-525, 2019 WL 1897288 (N.D. Ind. Apr. 25, 2019); *Higgins v. Lake Cnty. Cir. Ct. Clerk's Off.*, No. 17-cv-07637, 2025 WL 3683058 (N.D. Ill. Dec. 18, 2025). *But see Smith v. Illinois Dep't of Corr.*, No. 24-cv-5022, 2025 WL 744098, at *4 (N.D. Ill. Mar. 7, 2025) (considering and rejecting this argument).

This case is identical in material respects to *Omosegbon* and *Haynes*, so the court must apply this circuit's controlling law. Under that law, Diaz's claims against Schmidt are barred by the doctrine of sovereign immunity, so they will be dismissed without prejudice. *See Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043, 1052 (7th Cir. 2025) (dismissal on sovereign immunity grounds is without prejudice). This case will be closed.

ORDER

IT IS ORDERED that

1. Defendant James Schmidt's motion for summary judgment, Dkt. 42, is GRANTED.

2. Plaintiff Olga Diaz's claims are DISMISSED without prejudice as barred by sovereign immunity.

3. The clerk of court is directed to enter judgment for defendant and close this case.

Entered February 20, 2026,

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge